## MICHAEL F. ROBINSON, SR. *v.* COMMISSIONER OF CORRECTION
### (SC 16368)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued April 24, 2001—officially released January 1, 2002

*Steven R. Strom,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (respondent).

*Mary Anne Royle,* special public defender, for the appellee (petitioner).

PALMER, J. As in the companion case of *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2001), which we also have decided today, this appeal requires us to determine whether Public Acts 1995, No. 95-255, § 1 (P.A. 95-255),[1] which amended General Statutes (Rev. to 1995) § 54-125a[2] by increasing

[1] Public Acts 1995, No. 95-255, provides: "An Act Concerning Truth in Sentencing.

"Section 1. Subsection (b) of section 54-125a of the general statutes is repealed and the following is substituted in lieu thereof:

"(b) (1) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: Capital felony, as defined in section 53a-54b, felony murder, as defined in section 53a-54c, arson murder, as defined in section 53a-54d, murder, as defined in section 53a-54a, or any offense committed with a firearm, as defined in section 53a-3, in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school. (2) A PERSON CONVICTED OF AN OFFENSE, OTHER THAN AN OFFENSE SPECIFIED IN SUBDIVISION (1) OF THIS SUBSECTION, WHERE THE UNDERLYING FACTS AND CIRCUMSTANCES OF THE OFFENSE INVOLVE THE USE, ATTEMPTED USE OR THREATENED USE OF PHYSICAL FORCE AGAINST ANOTHER PERSON SHALL BE INELIGIBLE FOR PAROLE UNDER SUBSECTION (a) OF THIS SECTION UNTIL SUCH PERSON HAS SERVED NOT LESS THAN EIGHTY-FIVE PER CENT OF THE DEFINITE SENTENCE IMPOSED. (3) No person convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court shall be eligible for parole under subsection (a) of this section until such person has served such mandatory minimum sentence or fifty per cent of the definite sentence imposed, whichever is greater.

"Sec. 2. Section 54-125a of the general statutes is amended by adding subsection (c) as follows:

"(NEW) (c) The Board of Parole shall, not later than July 1, 1996, adopt regulations in accordance with chapter 54 to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted.

"Sec. 3. This act shall take effect July 1, 1995, except that section 1 shall take effect July 1, 1996."

[2] General Statutes (Rev. to 1995) § 54-125a provides: "Parole of prisoner serving definite or aggregate sentence of more than two years. Eligibility.

from 50 percent to 85 percent the portion of a sentence that certain violent offenders must serve before becoming eligible for parole, applies retroactively and, if so, whether that retroactive application violates the ex post facto clause of the United States constitution.[3] The respondent, the commissioner of correction (commis-

"(a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the commissioner of correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. At the discretion of the panel, and under the terms and conditions as may be prescribed by the panel including requiring the parolee to submit personal reports, the parolee shall be allowed to return to his home or to reside in a residential community center, or to go elsewhere. The parolee shall, while on parole, remain in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. Any parolee released on the condition that he reside in a residential community center may be required to contribute to the cost incidental to such residence. Each order of parole shall fix the limits of the parolee's residence, which may be changed in the discretion of such panel. Within three weeks after the commitment of each person sentenced to more than one year, the state's attorney for the judicial district shall send to the Board of Parole the record, if any, of such person.

"(b) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: Capital felony, as defined in section 53a-54b, felony murder, as defined in section 53a-54c, arson murder, as defined in section 53a-54d, murder, as defined in section 53a-54a, or any offense committed with a firearm, as defined in section 53a-3, in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school. No person convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court shall be eligible for parole under subsection (a) of this section until such person has served such mandatory minimum sentence or fifty per cent of the definite sentence imposed, whichever is greater."

[3] Article one, § 10, of the constitution of the United States provides in relevant part: "No State shall . . . pass any . . . ex post facto Law . . . ."

sioner), appeals from the judgment of the habeas court granting the petition for a writ of habeas corpus filed by the petitioner, Michael F. Robinson, Sr. In granting the petitioner's habeas petition, the habeas court concluded that the retroactive application of P.A. 95-255, § 1, to the petitioner's sentence of imprisonment by the board of parole violated the petitioner's rights under the ex post facto clause and, consequently, that he is eligible for parole upon completion of 50 percent, rather than 85 percent, of his sentence. For the reasons set forth in *Johnson* v. *Commissioner of Correction*, supra, 804, we conclude that, contrary to the determination of the habeas court, P.A. 95-255, § 1, applies prospectively only. Thus, although we disagree with the conclusion of the habeas court that P.A. 95-255, § 1, applies retroactively, we nevertheless agree with the habeas court that the petitioner is eligible for parole upon completion of 50 percent of his sentence. We, therefore, affirm the judgment of the habeas court.

The following undisputed facts and procedural history are set forth in the memorandum of decision of the habeas court. "On June 14, 1996, the petitioner . . . entered a plea of nolo contendere to the charges of [assault in the first degree] . . . in violation of General Statutes § 53a-59 (a) (3),[4] and [criminal] possession of a [pistol or revolver] . . . in violation of [General Statutes (Rev. to 1995)] § 53a-217c,[5] for crimes committed

[4] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[5] General Statutes (Rev. to 1995) § 53a-217c provides in relevant part: "(a) A person is guilty of criminal possession of a pistol or revolver when he possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, (2) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13, (3) has been confined

in January of 1995. On July 1, 1996, [P.A. 95-255, § 1, amended] General Statutes [Rev. to 1995] § 54-125a (b) by requiring that persons . . . convicted of an offense involving the use, attempted use, or threatened use of physical force against another person . . . be ineligible for parole until they ha[ve] served [85 percent] of their . . . sentences. Prior to July 1, 1996, such . . . person[s] [were] eligible for parole after they had served [50 percent] of their . . . sentences. . . . On August 2, 1996, the petitioner was sentenced . . . to ten years imprisonment, suspended after six years, [and] three years probation [on] the assault charge and two years probation [on] the [possession] charge. In September of 1996, the board of parole notified the petitioner by letter that, due to the nature of his [assault charge], [he] would have to serve [85 percent] of his sentence [before becoming eligible for parole pursuant to] . . . General Statutes [Rev. to 1995] § 54-125a (b) [as amended by P.A. 95-255, § 1].[6]

in a hospital for mental illness, as defined in section 17a-495, within the preceding twelve months by order of a probate court, (4) knows that he is subject to a restraining or protective order issued by a court, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person or (5) is an alien illegally or unlawfully in the United States. . . ."

[6] General Statutes (Rev. to 1995) § 54-125a, as amended by P.A. 95-255, § 1, provides: "Parole of prisoner serving definite or aggregate sentence of more than two years. Eligibility. Regulations. (a) A person convicted of one or more crimes who is incarcerated on or after October 1, 1990, who received a definite sentence or aggregate sentence of more than two years, and who has been confined under such sentence or sentences for not less than one-half of the aggregate sentence or one-half of the most recent sentence imposed by the court, whichever is greater, may be allowed to go at large on parole in the discretion of the panel of the Board of Parole for the institution in which the person is confined, if (1) it appears from all available information, including any reports from the Commissioner of Correction that the panel may require, that there is reasonable probability that such inmate will live and remain at liberty without violating the law, and (2) such release is not incompatible with the welfare of society. At the discretion of the panel, and under the terms and conditions as may be prescribed by the panel including requiring the parolee to submit personal reports, the parolee

"On August 21, 1998, the petitioner filed a[n] . . . amended petition for a writ of habeas corpus. The petitioner allege[d] [in his petition] that the application of P.A. 95-255, [§ 1] to him . . . retroactively increase[d] his punishment[7] and therefore violates the ex post facto

shall be allowed to return to his home or to reside in a residential community center, or to go elsewhere. The parolee shall, while on parole, remain in the legal custody and control of the board until the expiration of the maximum term or terms for which he was sentenced. Any parolee released on the condition that he reside in a residential community center may be required to contribute to the cost incidental to such residence. Each order of parole shall fix the limits of the parolee's residence, which may be changed in the discretion of such panel. Within three weeks after the commitment of each person sentenced to more than one year, the state's attorney for the judicial district shall send to the Board of Parole the record, if any, of such person.

"(b) (1) No person convicted of any of the following offenses, which was committed on or after July 1, 1981, shall be eligible for parole under subsection (a) of this section: Capital felony, as defined in section 53a-54b, felony murder, as defined in section 53a-54c, arson murder, as defined in section 53a-54d, murder, as defined in section 53a-54a, or any offense committed with a firearm, as defined in section 53a-3, in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school. (2) A person convicted of an offense, other than an offense specified in subdivision (1) of this subsection, where the underlying facts and circumstances of the offense involve the use, attempted use or threatened use of physical force against another person shall be ineligible for parole under subsection (a) of this section until such person has served not less than eighty-five per cent of the definite sentence imposed. (3) No person convicted of any other offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court shall be eligible for parole under subsection (a) of this section until such person has served such mandatory minimum sentence or fifty per cent of the definite sentence imposed, whichever is greater.

"(c) The Board of Parole shall, not later than July 1, 1996, adopt regulations in accordance with chapter 54 to ensure that a person convicted of an offense described in subdivision (2) of subsection (b) of this section is not released on parole until such person has served eighty-five per cent of the definite sentence imposed by the court. Such regulations shall include guidelines and procedures for classifying a person as a violent offender that are not limited to a consideration of the elements of the offense or offenses for which such person was convicted."

[7] "[T]o determine whether applying the [1995] amendment to the [petitioner] would constitute retroactive application of the amendment, we look to the law in effect on the date of [his] . . . offenses." *In re Daniel H.*, 237

clause of the United States constitution."[8] *Robinson* v. *Commissioner of Correction*, Superior Court, judicial district of New Haven, Docket No. CV 97-405187 (February 22, 2000) (26 Conn. L. Rptr. 573, 573–74).

The commissioner moved to dismiss, claiming, inter alia, that the habeas court did not have subject matter jurisdiction over the action because the petitioner's claim did not give rise to a protected liberty interest. The habeas court denied the commissioner's motion to dismiss, concluding that the petitioner need not establish a liberty interest to raise a cognizable claim for habeas relief under the ex post facto clause. The court also concluded that the retroactive application of P.A. 95-255, § 1, to the petitioner's sentence violated the ex post facto clause and, consequently, that the petitioner's parole eligibility was to be determined in accordance with General Statutes (Rev. to 1995) § 54-125a (b) (providing that offender is eligible for parole upon completion of 50 percent of sentence), the statute in effect when the petitioner committed the crime for which he was sentenced to a term of imprisonment.

The habeas court granted the commissioner's petition for certification to appeal, and the commissioner appealed from the judgment of the habeas court to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. After briefs were filed, this court, sua sponte, ordered supplemental briefing on the following issue: "In light of *Vincenzo* v. *Warden*, [26 Conn. App. 132, 599 A.2d 31] (1991), did the trial court lack subject

Conn. 364, 378, 678 A.2d 462 (1996); see also *Weaver* v. *Graham*, 450 U.S. 24, 31, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981) (criminal law is retroactive if it "changes the legal consequences of acts completed before its effective date").

[8] See footnote 3 of this opinion.

matter jurisdiction because the petitioner had no liberty interest in a claim for release on parole?"[9]

On appeal, the commissioner contends, inter alia, that: (1) the petitioner has no liberty interest in parole eligibility or release and, therefore, the habeas court lacked subject matter jurisdiction over the petitioner's habeas petition; and (2) the habeas court improperly concluded that the retroactive application of P.A. 95-

[9] This court, sua sponte, also ordered the parties to brief the following issue: "Did the trial court possess the authority to grant any actual relief in the absence of the board of parole [board] as a party?" We note that this issue was raised in the habeas court, which concluded, in a preliminary ruling, that, "[i]f the petitioner is successful in his ex post facto claim, joining the board in the action will give the court the capacity to successfully fashion a remedy." Thus, the trial court apparently assumed that the board was a necessary party, at least for purposes of granting appropriate relief in the event that the petitioner were to prevail on his ex post facto claim.

For reasons that are not apparent from the record, however, the board was never made a party. For the following reasons, we conclude that we need not decide whether the board should have been made a party to this action. First, even if it is assumed that the board is a necessary or indispensable party, the failure to join the board is not a jurisdictional defect depriving the habeas court or this court of subject matter jurisdiction. See General Statutes § 52-108 ("[a]n action shall not be defeated by the nonjoinder or misjoinder of parties"); see also *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 305, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990) (nonjoinder of necessary or indispensable party does not implicate jurisdiction of court). Second, although the board was not a party to the present case, it was a party to the companion case of *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 804, in which we addressed and decided precisely the same issues that we decide in the present case. Moreover, the board participated fully in the litigation and appeal of the *Johnson* case; indeed, the board and the commissioner were represented by the same assistant attorney general in *Johnson*. Finally, in light of our holding in *Johnson*, there is no doubt that, in the present case, the board is required to apply General Statutes (Rev. to 1995) § 54-125a (b), the statute in effect when the petitioner committed the crime for which he was sentenced to a term of imprisonment. It therefore would be a waste of judicial resources to remand the case to the habeas court to cure any defect caused by nonjoinder of the board. Accordingly, we leave for another day the question of whether the board is a necessary or indispensable party to a habeas proceeding in which the board, though not the petitioner's custodian, has been accused by the petitioner of improper or unlawful conduct.

255, § 1, to the petitioner's sentence violated the ex post facto clause. Inasmuch as *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 804, is factually and legally indistinguishable from the present case,[10] *Johnson* controls our resolution of the issues raised by the commissioner. In *Johnson*, we concluded that: (1) the habeas court did not lack subject matter jurisdiction over the habeas petition filed by the petitioner, Dwayne Johnson, in which Johnson challenged the board of parole's retroactive application of P.A. 95-255, § 1, to his sentence, merely because Johnson had failed to establish a liberty interest in parole eligibility; id., 817–19; (2) P.A. 95-255, § 1, applies prospectively only and, consequently, it was not applicable to Johnson's sentence for crimes that Johnson committed before the date on which P.A. 95-255, § 1, became effective; id., 822, 829; and (3) because P.A. 95-255, § 1, did not apply to Johnson's sentence, the minimum time that Johnson was required to serve before he became eligible for parole was governed not by P.A. 95-255, § 1, but, rather, by General Statutes (Rev. to 1995) § 54-125a (b), which requires that an offender serve 50 percent of his sentence before becoming eligible for parole. See id., 829.

For the reasons set forth in *Johnson*, we conclude that the petitioner in the present case is eligible for parole upon the completion of 50 percent of his sen-

---

[10] In the present case, the petitioner committed the crime for which he was sentenced to a term of imprisonment and entered his plea of nolo contendere prior to the effective date of P.A. 95-255, § 1, but was sentenced after that date. In *Johnson*, the petitioner committed his offenses before the effective date of P.A. 95-255, § 1, but entered his plea of guilty and was sentenced thereon after that date. Because we look to the date of the offense to determine whether the application of a criminal statute to a particular offense is retroactive; see footnote 7 of this opinion; the factual differences between the present case and *Johnson* are irrelevant for purposes of our resolution of the issues presented in this appeal.

tence. Because the habeas court came to the same conclusion, albeit for different reasons, we affirm.

The judgment is affirmed.

In this opinion the other justices concurred.