DAVID X. BOYD *v.* COMMISSIONER OF CORRECTION
(AC 26263)

Flynn, C. J., and Schaller and Gruendel, Js.

Argued March 21—officially released June 13, 2006

*Kent Drager*, senior assistant public defender, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (respondents).

*Opinion*

GRUENDEL, J. The petitioner, David X. Boyd, appeals following the habeas court's denial of his petition for certification to appeal from the judgment dismissing his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly failed to order that the board of parole[1] (board) reconsider the date set for his next parole eligibility hearing. We dismiss the appeal.

On October 22, 1980, the petitioner was convicted of murder in violation of General Statutes §§ 53a-54a and

---

[1] The petitioner moved to cite in the board of parole as a respondent, which the court granted on August 24, 2004.

53a-54c, and was sentenced to an indeterminate sentence of seventeen years to life in prison. After satisfying the minimum portion of his sentence, the petitioner was released on parole on at least two occasions. Most recently, while released on parole in 1994 and 1995, the petitioner was charged with various new crimes, including robbery in the first degree, assault in the second degree, theft of a firearm and criminal possession of a pistol or revolver. The petitioner subsequently was convicted of these crimes[2] and on February 6, 1998, was sentenced to a determinate sentence of thirteen years imprisonment, concurrent with his indeterminate life sentence.

On March 5, 1998, the petitioner was afforded a parole revocation hearing. At the hearing, the board, acting through a two person panel, voted to revoke the petitioner's parole for various violations by virtue of his arrest for the new crimes. The board also set a new parole eligibility hearing date for the petitioner in March, 2008.

The petitioner filed an amended petition for a writ of habeas corpus on August 16, 2004, claiming that the board abused its discretion when setting the date for his next parole eligibility hearing.[3] Specifically, the peti-

---

[2] This court upheld the conviction on appeal. *State* v. *Boyd*, 57 Conn. App. 176, 749 A.2d 637, cert. denied, 253 Conn. 912, 754 A.2d 162 (2000).

[3] In its October 13, 2004 return, the respondent commissioner of correction raised two affirmative defenses: First, that the petition is barred by collateral estoppel or res judicata as a result of a previous petition; and second, that an inmate serving an indeterminate life sentence has no right to a new parole hearing date. In its memorandum of decision, the court favorably referenced these affirmative defenses, but also based its decision on whether the board abused its discretion when setting the new parole hearing date. On appeal, the petitioner claims that these defenses do not provide alternate reasons to affirm the judgment of the habeas court. Because we conclude that the court correctly denied the petition on the merits, we do not reach these affirmative defenses.

tioner argued that, at the time of his parole revocation hearing, the board misinterpreted Public Acts 1995, No. 95-255, which amended General Statutes § 54-125a to increase the minimum time that a prisoner convicted of certain violent offenses must serve on determinate sentences before he is eligible for release on parole. The statute increased from 50 percent to 85 percent the amount of the sentence that must be served prior to parole eligibility.[4] The petitioner asserted that the board improperly was influenced by its incorrect interpretation of that statute when it set the date for his next parole eligibility hearing and, under *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2002), and *Robinson* v. *Commissioner of Correction*, 258 Conn. 830, 786 A.2d 1107 (2002), the cases correcting the board's interpretation of Public Acts 1995, No. 95-255, he was entitled to reconsideration so as to remove any influence of the misinterpretation.

On January 11, 2005, the court received evidence, including testimony from the petitioner and Gregory Everett, chairman of the board. On January 13, 2005, the court dismissed the petition for a writ of habeas corpus, finding that the board did not abuse its discretion in setting the new parole eligibility hearing date in March, 2008. Thereafter, the petitioner requested certification to appeal, which the court denied on January 24, 2005. This appeal followed. The petitioner now claims that the court abused its discretion by dismissing his petition for a writ of habeas corpus and denying his

[4] The board had been applying the 85 percent requirement to prisoners sentenced after January 1, 1996, even if the crime had been committed before that date. In *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 786 A.2d 1091 (2002), our Supreme Court concluded that the 85 percent requirement would be applicable only to sentences for crimes committed after January 1, 1996. Id., 819. The prisoner in *Johnson*, therefore, became eligible for a parole hearing after completing 50 percent of his sentence. Id., 829.

petition for certification to appeal because his claim is not frivolous, and the case should be reversed on the merits.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 423–24, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Saintval* v. *Commissioner of Correction*, 94 Conn. App. 283, 286, 893 A.2d 451 (2006).

The petitioner makes the same substantive claim on appeal that he made to the habeas court, which is that because his new parole eligibility hearing date suggests

that the board was influenced by the misinterpretation of the 85 percent requirement, he is entitled to a new hearing. The crux of the petitioner's argument is that *Johnson* and *Robinson* control his case. A brief review of *Johnson* and *Robinson* is, therefore, instructive. In both cases, the prisoner was incarcerated *solely* on a determinate sentence for a qualifying offense and was notified by the board that due to the nature of the offense he would have to serve 85 percent of his sentence before becoming eligible for parole pursuant to the amended statute. *Robinson* v. *Commissioner of Correction*, supra, 258 Conn. 834; *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 811. Our Supreme Court concluded that each of the prisoners had a cognizable claim of an ex post facto violation[5] because "the new law creates a genuine risk that he or she will be incarcerated longer under that new law than under the old law." *Johnson* v. *Commissioner of Correction*, supra, 818. This inquiry, however, presupposes that there is "retroactive application of the change in [the law]" to the prisoner's situation.[6] (Internal quotation marks omitted.) Id.

Accordingly, we begin with an important assumption underlying the petitioner's claim, which is that the board's misinterpretation of the amended statute affected its actions. The court made a finding that the board did not use either the 50 percent or 85 percent requirement when setting the date for the petitioner's

---

[5] Our Supreme Court distinguished *Johnson*, premised on an ex post facto violation, from *Vincenzo* v. *Warden*, 26 Conn. App. 132, 599 A.2d 31 (1991), in which this court addressed the liberty interests of prisoners under the due process clause. *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 817. The court then expressly declined to consider the issue posed by *Vincenzo*. Id., 817 n.13. Accordingly, we also do not consider a petitioner's liberty interest in parole in this case.

[6] At oral argument before this court, the petitioner conceded that if the new hearing date did not appear to coincide with 85 percent of his determinate sentence, his claim would suffer.

next parole eligibility hearing. We conclude that this finding is supported by the record. The parties agree that if the petitioner was required to serve 85 percent of his sentence, he would become eligible for parole in February, 2009.[7] Everett testified that the board may hold a parole eligibility hearing *up to* one year before a prisoner actually may be released on parole. From this testimony, the petitioner assumes that the March, 2008 eligibility hearing must reflect application of the 85 percent requirement. To the contrary, under this reasoning, with this hearing date, the petitioner may be released in six months, even *before* he has served 85 percent of his determinate sentence. The court, therefore, need not have drawn the inference that the petitioner desires.

In further support of his claim, the petitioner offers his testimony that at the March 5, 1998 hearing, he was informed that his parole was being revoked because of the thirteen year sentence, which is subject to the 85 percent requirement. The court, however, also heard testimony from Everett that the board's understanding of the service requirement did not influence the panel in setting the date for the petitioner's next parole eligibility hearing. Specifically, Everett testified that "[t]his is [the petitioner's] third release to parole supervision. It's his third return with charges. The board, I'm sure, didn't

---

[7] The petitioner correctly points out that the court improperly stated in its memorandum of decision that the 85 percent requirement would have resulted in a hearing date in 2009. We agree with the petitioner that there is a difference between the time at which one becomes eligible for release and the time at which one becomes eligible for a hearing to determine if he is suitable for release. We also recognize that this court has concluded that a prisoner may have a liberty interest in having the date at which he becomes eligible for parole properly established, even if a prisoner has no right to parole. See *Baker* v. *Commissioner of Correction*, 91 Conn. App. 855, 882 A.2d 1238, cert. granted on other grounds, 276 Conn. 927, 889 A.2d 816 (2005). Because we determine that the petitioner has not demonstrated that his parole eligibility hearing date was determined improperly, the court's misstatement is harmless.

consider it at 50 or 85 percent. [It] could have given [the petitioner] no new date. [It] could have told [the petitioner], you are never coming back to see us again. So, the board, based on this being his third strike, so to speak, out on parole, said, we're going to whack you for ten years from this hearing date."

"[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Lowe* v. *Shelton*, 83 Conn. App. 750, 765, 851 A.2d 1183, cert. denied, 271 Conn. 915, 859 A.2d 568 (2004). In light of this evidence,[8] the court was within its discretion to credit Everett's testimony and to discredit that of the petitioner. Accordingly, the petitioner has not proven that the 85 percent requirement influenced the board when it set the date for his next parole eligibility hearing.

Without application of the 85 percent requirement to his case, the petitioner cannot make "a colorable showing that he likely will serve more prison time as a result" of application of the new law; *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 818; and *Johnson* and *Robinson* are inapposite.[9] The petitioner's

[8] We note that unlike the letters issued to the prisoners in *Johnson* and *Robinson*, the letter sent to the petitioner documenting the results of the March 5, 1998 hearing makes no statement that the new parole eligibility hearing date reflects use of the 85 percent requirement.

[9] The parties also argue whether *Johnson* and *Robinson* are applicable because the petitioner is incarcerated on both the determinate thirteen year sentence, under which parole eligibility is governed by § 54-125a, and the indeterminate life sentence, under which parole eligibility is governed by § 54-125. The court concluded that because the life sentence controls, the alleged misinterpretation of Public Acts 1995, No. 95-255, is irrelevant to the petitioner's situation. Because we conclude that the petitioner has failed to show that he was adversely affected by the board's misinterpretation of the 85 percent requirement, regardless of which sentence controls, we need not reach this question.

claims, therefore, do not involve issues that are debatable among jurists of reason, could not be resolved in a different manner and are not adequate to deserve encouragement to proceed further.[10]

The appeal is dismissed.

In this opinion the other judges concurred.

---

[10] We note that, notwithstanding the petitioner's claims related to the 85 percent requirement, the board acted within its discretion when setting the new hearing date. The board was presented with evidence that the petitioner had on multiple occasions violated the terms of his parole, including the conviction for the offenses giving rise to the thirteen year sentence. In light of that evidence, the board was within its discretion to determine that the petitioner would not "live and remain at liberty without violating the law" and that his release is "incompatible with the welfare of society," and therefore he should not be afforded a parole eligibility hearing for another ten years. See General Statutes §§ 54-125 and 54-125a (a).